WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KEVIN JAMES WELLS,                    )
                                      )
                        Plaintiff,    )
                                      )
        vs.                           )
                                      )
KILOLO KIJAKAZI, acting Commissioner of )
Social Security,                      )
                                      )          No. 3:22-cv-0267-HRH
                        Defendant.    )
_____ )


O R D E R

        This is an action for judicial review of a determination that plaintiff is no longer

disabled. Plaintiff Kevin James Wells has timely filed his opening brief[1] to which defendant,

Kilolo Kijakazi, has timely responded.[2] Oral argument was not requested and is not deemed

necessary.

Procedural Background

        On July 29, 2005, plaintiff was found disabled beginning on February 1, 2005, and

awarded Title XVI benefits. Plaintiff was injured in an ATV accident in 1997/1998 and

sometime thereafter developed what was then believed to be a muscle movement disorder

_____

        [1]Docket No. 16.

        [2]Docket No. 18.

-1-

(dystonia). The determination that plaintiff was disabled in 2005 was based on an opinion by Dr. Fraser, the "state agency medical consultant...."[3] "Dr. Fraser had opined that [plaintiff] was wheelchair bound and could stand and/or walk less than two hours in an eight-hour workday and sit less than six hours and had limited ability to push or pull with the left upper and lower extremities...."[4]

On December 7, 2017, the agency began a review of plaintiff's "disability case."[5] On April 27, 2018, it was determined that plaintiff was no longer disabled as of April 2018.[6] This determination was upheld upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). After a hearing on October 19, 2021, the ALJ issued an unfavorable decision. Plaintiff sought review by the Appeals Council, and on October 13, 2022, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's November 24, 2021, decision the final decision of defendant. On December 12, 2022, plaintiff commenced this action for judicial review of defendant's final decision.

The ALJ's Decision

The ALJ first found that "[t]he most recent favorable medical decision finding that the claimant was disabled is the determination dated August 9, 2005. This is known as the

---

[3]Admin. Rec. at 18.

[4]Admin. Rec. at 18.

[5]Admin. Rec. at 102.

[6]Admin. Rec. at 106.

'comparison point decision' or CPD."[7]  The ALJ noted that "[a]t the time of the CPD, the claimant had the following severe medically determinable impairment:  dystonia, also categorized as 'late effects of injuries to the nervous system.'  This impairment was found to result in the residual functional capacity to perform less than sedentary work."[8]

The ALJ then applied the seven-step evaluation used to determine whether a Title XVI claimant continues to be disabled.[9]

---

[7]Admin. Rec. at 17.

[8]Admin. Rec. at 17.

[9]The seven steps are as follows:

> 1. At the first step, the ALJ determines whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant does, the ALJ will find that the claimant continues to be disabled.
> 2. At the second step, the ALJ determines if medical improvement has occurred.  If medical improvement has occurred, the ALJ will proceed to step three. If medical improvement has not occurred, the ALJ proceeds to step four.
> 3. At the third step, the ALJ determines whether medical improvement is related to the claimant's ability to work.  If it is, the ALJ proceeds to step five.
> 4. At the fourth step, the ALJ determines whether an exception to medical improvement applies....
> 5. At the fifth step, the ALJ determines whether all the claimant's current impairments in combination are severe within the meaning of 20 C.F.R. § 416.994(b)(5)(v).  If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the ALJ will find that the claimant is no longer disabled.
> 6. At the sixth step, the ALJ assesses the claimant's RFC based

(continued...)

At step one, the ALJ found that "[s]ince April 15, 2018, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1...."[10] The ALL considered Listings 1.18 (abnormality of a major joint in any extremity), 11.04 (vascular insult to the brain), 11.22 (motor neuron disorders other than ALS), and the mental disorder listings in 12.00.[11] The ALJ considered the "paragraph B" criteria and found that plaintiff had moderate limitations in his ability to understand, remember, or apply information; moderate limitations in his ability to concentrate, persist, or maintain pace; mild limitations in his ability to interact with others; and mild limitations in his ability to adapt or manage himself.[12]

---

[9](...continued)
> on h[is] current impairments and determines if []he can perform past relevant work. If the claimant has the capacity to perform past relevant work, the ALJ will find that the claimant's disability has ended. If not, the ALJ proceeds to the final step. 7. At the seventh and final step, the ALJ determines whether other work exists in significant numbers in the national economy that the claimant can perform, given h[is] RFC and considering h[is] age, education, and past work experience. If the claimant can perform other work, the ALJ will find that []he is no longer disabled. If the claimant cannot perform other work, the ALJ will find that h[is] disability continues.

Castaneda v. Berryhill, Case No. 18-cv-07363-DMR, 2020 WL 1332092, at *2 (N.D. Cal. March 23, 2020).

[10]Admin. Rec. at 19.

[11]Admin. Rec. at 20.

[12]Admin. Rec. at 20-21.

-4-

At step two, the ALJ found that "[m]edical improvement ... occurred on April 15, 2018...."[13]  In particular, the ALJ noted that plaintiff "has not been 'wheelchair bound' or unable to walk" but rather has "demonstrated independent ambulation without assistive devices...."[14]

At step three, the ALJ found that "claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity...."[15]

Because the ALJ found that plaintiff's medical improvement was related to his ability to work, she was not required to make step four findings.

At step five, the ALJ found that "since April 15, 2018, the claimant has had the following medically determinable impairments:  dystonia, right-hip degenerative joint disease, secondary Parkinsonism, neurocognitive disorder, polysubstance abuse, anxiety disorder, depressive disorder, mild cervical degenerative disc disease, and lumbar-spine strain with minimal disc-space narrowing.  These are claimant's current impairments."[16]  The ALJ also found that plaintiff's <u>severe</u> impairments, since April 15, 2018, were "dystonia, right-hip degenerative joint disease, secondary Parkinsonism, neurocognitive disorder, and

---

[13]Admin. Rec. at 22.

[14]Admin. Rec. at 22.

[15]Admin. Rec. at 22.

[16]Admin. Rec. at 18.

polysubstance abuse...."[17]  The ALJ found that plaintiff's back and neck pain were non-severe impairments.[18]  The ALJ also found that plaintiff's anxiety, panic disorder, and depression were non-severe impairments.[19]  And, the ALJ found that PTSD was not a medically determinable impairment.[20]

At step six, the ALJ found that

> since April 15, 2018, based on the current impairments, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he can stand and/or walk for a total of two hours in an eight-hour workday, sit for up to six hours in an eight-hour workday, perform frequent left pushing and pulling, and perform frequent foot-control operation with the right lower extremity, and he has further non-exertional limitations as follows.  He can frequently balance, stoop, and climb ramps and stairs.  He can never climb ladders, ropes or scaffolds.  With the left upper extremity, he can perform frequent gross handling and fine fingering.  He must avoid concentrated exposure to extreme cold and excessive vibration, and he must avoid all unprotected heights and avoid even moderate exposure to hazardous machinery.  He can perform work with simple, routine, and repetitive tasks.[[21]]

The ALJ discounted plaintiff's pain and symptom statements, finding that "the inconsistencies in his subjective reports and allegations, as well as in his benefits-connected

---

[17]Admin. Rec. at 18.

[18]Admin. Rec. at 19.

[19]Admin. Rec. at 19.

[20]Admin. Rec. at 19.

[21]Admin. Rec. at 22.

-6-

objective presentation, erode the reliability fo his subjective allegations of symptoms and their limiting effects."[22] The ALJ also discounted plaintiff's pain and symptom statements because he received "minimal treatment for dystonia or hip complaints" and because his symptoms related to these impairments improved with treatment.[23] The ALJ discounted plaintiff's symptoms as to his mental impairments because of a lack of treatment and because his symptoms appeared to improve with treatment.[24] And, the ALJ discounted plaintiff's pain and symptom statements because of his reported daily activities.[25]

The ALJ gave significant weight to the opinion of Dr. Caldwell.[26] The ALJ gave some weight to the opinion of Dr. Klimow.[27] The ALJ gave little weight to the opinion of

---

[22]Admin. Rec. at 28.

[23]Admin. Rec. at 28.

[24]Admin. Rec. at 31.

[25]Admin. Rec. at 32.

[26]Admin. Rec. at 33. On April 18, 2019, Dr. Jay Caldwell, a nonexamining source, opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 2 hours; sit for 6 hours but could only sit for 45-60 minutes at a time and then would need a brief 3-5 minute break; could frequently push/pull with the left and right upper extremities; could frequently climb ramps/stairs, balance, and stoop; could never climb ladders/scaffolds; was unlimited as to reaching overhead and feeling; had no limitations as to handling and fingering on the right but was limited to frequently on the left; and should avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise, vibration, fumes, odors, dust, gases, poor ventilation, and hazards. Admin. Rec. at 761-764.

[27]Admin. Rec. at 33. Dr. Klimow examined plaintiff on April 3, 2019, and opined that plaintiff had

(continued...)

-7-

Dr. Fraser and to the opinion of Dr. Downs.[28]  The ALJ gave significant weight to Dr.

[27](...continued)

no deficits in his ability to speak or see.  He leans to the left when sitting and does not put weight on his right hip, which may interfere in his ability to do prolonged sitting[.]  He has decreased range of motion at the right hip and abnormal gait and this would affect his ability to stand, move about, and travel.  It also would affect his ability to lift and carry items.  He would have difficulty doing repetitive handling of objects with the left hand and lifting and carrying items due to left hand weakness.  I am unable to detect specific dystonia or movement disorder.  He does describe a head injury that led to involvement of the left side.  There is evidence of abnormal proprioception on the left foot and left hand weakness which would be consistent with his history and traumatic head injury.  I noted no specific mental impairment limiting the claimant's ability to reason or make occupational, personal or social adjustments.

Admin. Rec. at 757-758.

[28]Admin. Rec. at 34.  On March 7, 2018, Shirley Fraser, M.D., a nonexamining source, opined that plaintiff could occasionally lift/carry 10 pounds; could frequently lift/carry less than 10 pounds; could stand/walk for 2 hours; could sit for 6 hours; was unlimited as to push/pull; was unlimited as to reaching in any direction; could occasionally handle/finger; and had no visual, communicative, or environmental limitations.  Admin. Rec. at 81-82.  Dr. Downs evaluated plaintiff on March 5, 2018, and opined that

he should not work at a physically demanding job[.  I]n fact he would need an extremely sedentary job.  In spite of the abnormal movements of his hands he reports he can use [them] quite well, he can write, in the past at least he has been able to type on a computer.  He may require some vocational rehabilitation to learn a skill, but I believe that there is a good chance that he could perform a sedentary job.  He may not be as fast as others in regard to his manual dexterity, and he would essentially need to have a desk job.  Based on my observations as he left the building, I wonder if he would actually be able to do much more.  I can not fully discount the possibility that he has

(continued...)

Mack's opinion.[29]  The ALJ gave some weight to the opinions of Dr. Kiehl and Dr. Rose.[30]

_____

[28](...continued)
> fluctuating symptoms that might [vary] in relationship to the situation and stress, which is why I suggest an evaluation at a movement disorder clinic.

Admin. Rec. at 519.

[29]Admin. Rec. at 35.  On April 19, 2019, Dr. Mack, a nonexamining source, opined that plaintiff was not significantly limited in his ability to remember locations and work-like procedures, understand/remember/carry out very short and simple instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday or workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, accept instructions, respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others; and was moderately limited in his ability to understand/remember/carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and respond appropriately to changes in the work setting.  Admin. Rec. at 779-780.  Dr. Mack also opined that plaintiff was "able to understand, remember and carry out simple instructions[;] sustain concentration, persistence and pace for simple tasks[;] interact appropriately with others[; and o]nce learned, [he] can adjust to changes in the regular work place."  Admin. Rec. at 781.  Dr. Mack further opined that plaintiff was "capable of the basic mental demands of unskilled work."  Admin. Rec. at 781.

[30]Admin. Rec. at 35-36.  On April 27, 2018, Royal Kiehl, M.D., a nonexamining source, opined that plaintiff had moderate limitations as to understanding, remembering or applying information; mild limitations as to interacting with others; moderate limitations as to concentration, persistence, or pace; and moderate limitations as to adapting or managing oneself.  Admin. Rec. at 76.  Dr. Kiehl also opined that plaintiff had no limitations in his ability to ask simple questions or request assistance, accept instructions, respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting

(continued...)

(...continued)
them or exhibiting behavioral extremes, and be aware of normal hazards and take appropriate precautions; was not significantly limited in his ability to remember locations and work-like procedures, understand/remember/carry out short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, and travel to unfamiliar places or use public transportation; and was moderately limited in his ability to understand/remember/carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and set realistic goals or make plans independently of others. Admin. Rec. at 82-84. Dr. Kiehl opined that although plaintiff had moderate limitations as to concentration, persistence, or pace, "he is capable of simple, repetitive-type work tasks on a sustained basis as evidenced by objective testing and his own reported ADLs." Admin. Rec. at 83. Dr. Kiehl also opined that despite plaintiff's "mild to moderate limitations[,] all evidence shows that he is capable of sustaining simple, repetitive-type work activities." Admin. Rec. at 84. On April 23, 2018, Dr. Rose examined plaintiff and opined that

> [b]ased on cognitive testing with the WAIS-VI, Mr. Wells' ability to understand, remember and apply information appears moderately impaired. His ability to socially interact with others appears mildly impaired. Concentration, persistence and pace appear mildly impaired based on results from the low average WAIS-IV Working Memory Index, above average processing speed and low average Trail Making Test findings. His ability to adapt or manage himself appears moderately impaired due to his physical disabilities (dystonia musculorum deformans) and long-term reliance on his parents for assistance. His ability to perform functional activities such as sitting, standing, moving about, lifting, carrying and handling objects appears moderately impaired. Due to his history of substance abuse and dependence, he does not have the ability to manage funds independently.

(continued...)

-10-

At step six, the ALJ also found that plaintiff had "no past relevant work...."[31]

At step seven, the ALJ found that "[s]ince April 15, 2018, considering the claimant's age, education, work experience, and residual functional capacity based on the current impairments, the claimant [would be] able to perform a significant number of jobs in the national economy[,]" including work as a production assembler, a routing clerk, or an electrical accessories assembler.[32]

Thus, the ALJ concluded that "[t]he claimant's disability ended on April 15, 2018, and the claimant has not become disabled again since that date...."[33]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews

---

[30](...continued)
Admin. Rec. at 530.

[31]Admin. Rec. at 36.

[32]Admin. Rec. at 37.

[33]Admin. Rec. at 38.

-11-

v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred in finding his anxiety and depression to be non-severe impairments. At step five, the ALJ found that "[s]ince April 15, 2018," plaintiff's current impairments included an anxiety disorder and a depressive disorder, but the ALJ also found that plaintiff's anxiety and depression were non-severe impairments.[34] Plaintiff argues that this was error and that the ALJ should have found that his anxiety and depression were severe impairments.

Plaintiff characterizes this error as a step two error but in this case, the ALJ did not apply the five-step sequential analysis used to determine whether an individual is disabled because the ALJ was evaluating whether plaintiff continued to be disabled. In Title XVI disability review cases such as this, the ALJ applies a seven-step evaluation, step five of

---

[34]Admin. Rec. at 18-19.

-12-

which requires the ALJ "to determine whether all your current impairments in combination are severe...." 20 C.F.R. § 416.994(b)(5)(v). That said, at both step two of the five-step initial disability evaluation process and step five of the seven-step evaluation that applies in a disability review case such as this one, the ALJ's primary task is to determine whether the claimant has an impairment or combination of impairments that "significantly limit the claimant's ability to do basic work activities[.]" Castaneda, 2020 WL 1332092, at *2.

The ALJ determined that plaintiff's anxiety and depression were not severe because these diagnoses were "mostly in the period" before April 15, 2018, because he received "no ongoing treatment for [these] conditions[,]" and because he mostly "complained of symptoms of anxiety and depression ... in the context of acute exacerbations with alcohol intoxication and subsequent withdrawal or in the setting of distressing circumstances ... or admitted to some anxiety in the setting of his physical problems...."[35] The ALJ concluded that "given the minimal and sporadic treatment, I do not find that the medical evidence ... supports finding that anxiety and depression have caused the claimant more than minimal interference in the ability to perform work activities."[36]

Plaintiff first argues that the ALJ improperly relied on Dr. Rose's evaluation and Dr. Kiehl's opinion in deciding that plaintiff's anxiety and depression were not severe because neither Dr. Rose nor Dr. Kiehl considered the extent of his anxiety and depression. Plaintiff

---

[35]Admin. Rec. at 19.

[36]Admin. Rec. at 19.

-13-

argues that neither Dr. Rose nor Dr. Kiehl factored in the impact his anxiety and depression might have on his ability to engage in sustained work activity.

First of all, the ALJ did not even discuss Dr. Rose's evaluation or Dr. Kiehl's opinion in connection with her step-five finding that plaintiff's anxiety and depression were non-severe. The ALJ did not consider Dr. Rose's and Dr. Kiehl's opinions until step six, when she was determining plaintiff's RFC. But to the extent that the ALJ might have relied on these opinions at step five, there was no error.

Plaintiff contends that Dr. Rose and Dr. Kiehl did not consider the impact his anxiety and depression would have on his ability to work, but Dr. Rose noted that plaintiff reported problems with anxiety and depression[37] and Dr. Kiehl had access to Dr. Rose's evaluation.[38] Moreover, both doctors would have had access to some of plaintiff's medical records, which documented his anxiety and to a lesser degree, his depression. Given that both doctors were aware of plaintiff's reported anxiety and depression, it is likely they considered these impairments and plaintiff has not pointed to any evidence suggesting to the contrary. It may also be worth noting that the ALJ only gave some weight to Dr. Rose's and Dr. Kiehl's opinions.[39] In assessing the limitations that flowed from plaintiff's mental impairments, the

---

[37]Admin. Rec. at 525.

[38]Admin. Rec. at 84.

[39]Admin. Rec. at 35-36.

ALJ relied more on Dr. Mack's opinion, giving it significant weight,[40] and Dr. Mack expressly noted that plaintiff had a history of anxiety.[41] Dr. Mack, like Drs. Rose and Kiehl, was aware of plaintiff's anxiety and depression and presumably factored these impairments into his opinion.

Plaintiff also argues that the ALJ erred because she discounted the evidence of his anxiety and depression because the symptoms occurred in connection with his substance use. Plaintiff argues that "the ALJ implicitly relied on [his substance] abuse when analyzing [his] mental impairments[,]" which is error. Calhoun v. Colvin, Case No. C12-845–MJP–JPD, 2013 WL 2127275, at *3 (W.D. Wash. May 15, 2013). A claimant's substance use is not relevant if the ALJ "has not yet found the claimant to be disabled...." Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001).[42] Plaintiff argues that the ALJ should not have considered what impact his substance use had on his anxiety and depression prior to determining whether these impairments were severe.

Plaintiff argues that if the ALJ had not improperly properly considered his substance use when determining whether his anxiety and depression were severe impairments, she

---

[40]Admin. Rec. at 35.

[41]Admin. Rec. at 796.

[42]Although Bustamante was an initial claim for disability benefits case, the rules pertaining to an ALJ's consideration of a claimant's substance use also apply in continuing disability review cases such as this. See SSR 13-2p at n.1 "('[t]he policy interpretations in this SSR apply to all other cases in which we must make determinations about disability, including ... continuing disability reviews of adults and children under titles II and XVI of the Act").

would have found that these impairments were severe because the medical evidence of record plainly shows that he has long suffered from anxiety and depression.[43]  Plaintiff argues in light of this evidence, had the ALJ not improperly considered his substance use at step five, the ALJ would have found his anxiety and depression to be severe impairments.

The ALJ did err at step five in her analysis of plaintiff's substance use.  The ALJ considered plaintiff's substance use when determining whether his anxiety and depression were severe impairments rather than waiting to consider his substance use once she had determined that plaintiff was in fact disabled.  It is possible that the ALJ might have found plaintiff's anxiety and depression severe impairments had she not prematurely considered the impact that his substance use had on these impairments.

The ALJ also erred in finding plaintiff's anxiety and depression non-severe because she relied on the fact that he had not engaged in treatment.  The Ninth Circuit has long "criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"

---

[43]Admin. Rec. at 1313, 1315, 1317, 1324, 1331, 1332, 1334, 1340, 1344, 1348, 1350 (ER visits for anxiety in 2008 and 2009); Admin. Rec. at 1310, 1504, 1508, 1515 (ER visits for anxiety in 2010); Admin. Rec. at 1254, 1300, 1490, 1491, 1494, 1495 (ER visits for anxiety in 2011); Admin. Rec. at 1217, 1223, 1226, 1229, 1236, 1250 (ER visits and PCP visits for anxiety in 2012); Admin. Rec. at 1132, 1137, 1142, 1149, 1173 (ER visits and PCP visits for anxiety in 2013); Admin. Rec. at 723-724, 726, 1118, 1122 (ER and behavioral health visits for anxiety and depression in 2014); Admin. Rec. at 718, 720 (ER and behavioral health visits for anxiety in 2015); Admin. Rec. at 858, 888, 920 (ER visits for anxiety in 2019); and Admin. Rec. at 820 (ER visit for anxiety in 2020).

Regennitter v. Comm'r of Social Sec. Admin., 166 F.3d 1294, 1299–300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).

In sum, the ALJ erred at step five when she found that plaintiff's anxiety and depression were non-severe impairments. The question then becomes whether this error was harmless. An error is harmless if it is "'inconsequential to the ultimate nondisability determination.'" Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)).

Plaintiff argues that the ALJ's step-five error was not harmless because it "permeated the remainder of [the ALJ's] decision."[44] Plaintiff makes a vague argument that his RFC would have been different had the ALJ found his anxiety and depression severe. But, plaintiff does not point to any specific limitations that are supported by substantial evidence that he thinks the ALJ should have included in his RFC if his anxiety and depression were considered severe impairments. The ALJ improperly relied on plaintiff's lack of treatment in determining that his mental impairments were non-severe and the ALJ considered the impact of plaintiff's substance use prematurely, but plaintiff has not shown how these failures impacted the remainder of the ALJ's decision.

Moreover, "'[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting Titles II & XVI: Assessing

---

[44]Plaintiff's Reply at 1, Docket No. 19.

-17-

Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." Id. Here, the ALJ determined that plaintiff's current impairments included an anxiety disorder and a depressive disorder. And, the ALJ expressly stated that "[r]egardless of the precise mental diagnoses found 'severe,' it is functioning that drives the sequential disability analysis" and that she had "considered all of the claimant's established symptoms and resulting functional limitations ... in assessing the claimant's .... maximum residual functional capacity...."[45] The ALJ went on to discuss plaintiff's allegations regarding his depression and anxiety,[46] the medical evidence relating to his mental impairments, and any resulting functional limitations.[47] The ALJ plainly considered how plaintiff's anxiety and depression impacted his functional capacity, even though the ALJ found that these impairments were non-severe. Thus, the ALJ's step-five error was harmless.

Plaintiff next argues that the ALJ erred in her consideration of his subjective pain and symptom statements. If

> the ALJ "determines that a claimant for Social Security benefits
> is not malingering and has provided objective medical evidence
> of an underlying impairment which might reasonably produce
> the pain or other symptoms []he alleges, the ALJ may reject the

---

[45]Admin. Rec. at 19.

[46]Admin. Rec. at 23.

[47]Admin. Rec. at 29-32.

> claimant's testimony about the severity of those symptoms only
> by providing specific, clear, and convincing reasons for doing
> so.'"

Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015)). "'This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony.'" Id. (quoting Treichler v. Comm'r, Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)).

Plaintiff argues that the ALJ failed to identify which testimony the ALJ found not credible and why the ALJ found it not credible. Plaintiff points to the ALJ's statement that she found "that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[48] The ALJ then proceeded to summarize the medical evidence.[49] But, as the Ninth Circuit has held, a summary of the medical evidence is "not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited." Brown-Hunter, 806 F.3d at 494. Thus, plaintiff argues that the ALJ

---

[48]Admin. Rec. at 24.

[49]Admin. Rec. at 24-32.

erred in her consideration of his pain and symptom statements.

Plaintiff has, however, ignored the specific reasons the ALJ gave for discounting his pain and symptom statements. Specifically, the ALJ discounted plaintiff's pain and symptom statements because "the inconsistencies in his subjective reports and allegations, as well as in his benefits-connected objective presentation, erode the reliability fo his subjective allegations of symptoms and their limiting effects."[50] The ALJ also discounted plaintiff's pain and symptom statements because he received "minimal treatment for dystonia or hip complaints" and because his symptoms related to his physical impairments improved with treatment.[51] The ALJ discounted plaintiff's symptoms as to his mental impairments because of a lack of treatment and because his symptoms appeared to improve with treatment.[52] And, the ALJ discounted plaintiff's pain and symptom statements because of his reported daily activities.[53]

Although plaintiff did not challenge any of these reasons in his opening brief, the court declines to find that plaintiff has waived his right to do so. See Sweets v. Comm'r of Soc. Sec., Case No. 19cv1816-BLM, 2020 WL 5759756, at *19 (S.D. Cal. Sept. 25, 2020) (citing Cruz v. Int'l Collection Corp., 673 F.3d 991, 998 (9th Cir. 2012)) (because "[p]laintiff

---

[50]Admin. Rec. at 28.

[51]Admin. Rec. at 28.

[52]Admin. Rec. at 31.

[53]Admin. Rec. at 32.

-20-

does not challenge all of the ALJ's specific reasons for discounting his subjective complaints, Plaintiff has waived the right to challenge all of the reasons"). The court will consider whether the reasons given by the ALJ were clear and convincing.

The first reason the ALJ gave for discounting plaintiff's pain and symptom statements as they pertain to his physical impairments was that there were many inconsistencies in the record. An ALJ may discount a claimant's subjective statements based on inconsistencies between his statements and his conduct, which includes his presentation when seeing providers. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ pointed out that "[p]roviders often found normal gait, strength, and range of motion without focal neurological deficits, but the claimant would present with a stiff or unusual gait in disability exams or evaluations...."[54] In particular, the ALJ cited to Dr. Downs' observations, noting that

> Dr. Downs made remarkable and puzzling observations of relatively normal movement before and after the exam that contrasted with the claimant's presentation in the exam, with a particularly stark difference between his stiff gait and reluctant engagement in left strength testing during the exam and his 'quick, sure' walking gait outside the clinic.[55]

This was a clear and convincing reason for discounting plaintiff's pain and symptom statements as they pertain to his physical impairments.

The second reason the ALJ gave for discounting plaintiff's pain and symptom

_____

[54]Admin. Rec. at 32.

[55]Admin. Rec. at 32 (citing Admin. Rec. at 518).

-21-

statements as they pertain to his physical impairments is that he received "minimal treatment for dystonia or hip complaints...."[56] "A claimant's subjective symptom testimony may be undermined by 'an unexplained, or inadequately explained, failure to ... follow a prescribed course of treatment.'" Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ explained that "[f]rom 2005 to the time of cessation [April 15, 2018], the claimant's medical care consisted largely of sporadic emergency department visits for acute physical issues and alcohol-related illness and injuries...."[57] The medical evidence of record supports the ALJ's finding that plaintiff received minimal treatment for his physical impairments. This was a clear and convincing reason for discounting plaintiff's pain and symptom statements as they pertain to his physical impairments.

The third reason the ALJ gave for discounting plaintiff's pain and symptom statements as they pertain to his physical impairments is that his symptoms improved with treatment. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017). The ALJ noted that when plaintiff "reestablished taking Sinemet, he did endorse significant improvement."[58] The record bears this out as Dr. Trimble noted in June 2020, that after

---

[56]Admin. Rec. at 28.

[57]Admin. Rec. at 24.

[58]Admin. Rec. at 28.

starting Sinemet, plaintiff "notice[d] marked improvement in his ability to walk with less curling of his toes and cramping of his tongue."[59]  This was a clear and convincing reason, albeit a fairly weak one.

The ALJ also gave two specific reasons for discounting plaintiff's symptoms as they pertain to his mental impairments.  The ALJ discounted these statements because of a lack of treatment and because they were inconsistent with the medical evidence.[60]  The medical evidence of record supports the ALJ's finding that plaintiff had not had any significant treatment for his mental health impairments.  But, as the Ninth Circuit has long recognized, a claimant "'may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  Nguyen, 100 F.3d at 1465 (quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).  Here, the nature of plaintiff's mental impairments may, at least in part, explain why plaintiff did not pursue mental health treatment.  This was not a clear and convincing reason for discounting plaintiff's symptom statements as they pertain to his mental impairments.

As for whether plaintiff's mental health impairments improved with treatment, the ALJ pointed out that at an October 2020 ER visit, plaintiff reported that "he had consulted

_____

[59]Admin. Rec. at 798.

[60]Admin. Rec. at 31.

-23-

behavioral health in the past but felt better so no longer went."[61]  This is, at best, weak evidence that plaintiff's mental impairments improved with treatment.  Moreover, it is somewhat inconsistent for the ALJ to find that plaintiff's mental health impairments improved with treatment when the ALJ found that plaintiff did not seek treatment for these impairments.  This was not a clear and convincing reason for discounting plaintiff's symptom statements as they pertain to his mental impairments.

Finally, the ALJ discounted plaintiff's pain and symptom statements based on his reported daily activities.[62]  The ALJ found plaintiff's ability to play the guitar for about one hour a day inconsistent with his contention that he had "quite limited use of his left hand."[63]  The ALJ also explained that this activity "suggests that he can sit for at least one hour at a time and that he can engage in gross handling and fine fingering with both hands."[64]  The ALJ also pointed out that plaintiff had told Dr. Rose "that he could do his laundry, helped get his child ready for school and helped his child with homework...."[65]  The ALJ found that this testimony was inconsistent with other testimony given by plaintiff that his girlfriend did the laundry and more importantly, that his ability to do laundry was inconsistent with his

---

[61]Admin. Rec. at 31, 820.

[62]Admin. Rec. at 32.

[63]Admin. Rec. at 32.

[64]Admin. Rec. at 32.

[65]Admin. Rec. at 32 (citing Admin. Rec. at 523).

-24-

statements about the limited use of his left hand because "laundry ... is a two-handed operation[.]"[66]  The ALJ also found that plaintiff's ability to help his child with homework was inconsistent with his statements regarding memory problems and his ability to keep a routine.[67]

"[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Fair, 885 F.2d at 603).  The ALJ attempted to explain how plaintiff's ability to engage in daily activities could transfer to a work setting but the evidence does not show that plaintiff was doing any of these activities for a substantial amount of time each day.  This was not a clear and convincing reason for discounting plaintiff's pain and symptom statements.

Because the ALJ gave three clear and convincing reasons for do so, the ALJ did not err in discounting plaintiff's pain and symptom statements as they pertain to his physical impairments.  But the ALJ did err in discounting plaintiff's symptom statements as they pertain to his mental impairments because none of the reasons given by the ALJ for doing so were clear and convincing.

This error, however, was harmless because plaintiff has not explained or shown how

[66]Admin. Rec. at 32.

[67]Admin. Rec. at 32.

this error affected the remainder of the ALJ's decision. Plaintiff has not pointed to any allegations regarding his functional limitations flowing from his mental impairments that he thinks the ALJ should have included in his RFC. Plaintiff has not shown how, if the ALJ would have believed his symptom statements as they pertain to his anxiety and depression, his RFC would have been different. In short, this error was "'inconsequential to the ultimate nondisability determination.'" Ford, 950 F.3d at 1154 (quoting Tommasetti, 533 F.3d at 1038).

Finally, plaintiff argues that the ALJ failed to fully and fairly develop the record. "[T]he ALJ has 'a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983)). "This is particularly true where ... the claimant was not represented by counsel." Id. Although plaintiff is currently represented by counsel, he was not represented at the administrative hearing.

Plaintiff contends that at the administrative hearing, after he testified that he had numbness and tingling in his tongue and numbness in his body, the ALJ asked no follow-up questions as to how the numbness in his tongue affected his speech or how the numbness in his body affected his ability to grasp or handle. Similarly, plaintiff argues that after he testified that he was struggling to control his anxiety, the ALJ asked him no follow-up questions about his anxiety, such as how often he had anxiety attacks or how they impacted his ability to function.

-26-

"'An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" Ford, 950 F.3d at 1156 (quoting Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001)). Here, the record was neither ambiguous nor inadequate. There was sufficient evidence in the record as to how plaintiff's physical and mental impairments impacted his ability to function. The ALJ did not fail to fulfill her duty to fully and fairly develop the record.

<u>Conclusion</u>

Based on the foregoing, defendant's final decision is affirmed. The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 11th day of August, 2023.

/s/ H. Russel Holland
United States District Judge

-27-